Ross *et al. v.* THE ANGELINE ANDERSON.[1]

SAME *v.* CERTAIN BALES OF COTTON.

(*Circuit Court, E. D. New York.* July 21, 1888.)

SALVAGE—ABANDONMENT OF SERVICE.

The Anderson, a lighter loaded with cotton, was, with other vessels, lying at a pier, when fire broke out on one of the vessels, and communicated to the others. The fastenings of the vessels burned off, and two steam-tugs came into the slip, played streams of water on the vessels, and commenced to tow them. After the tugs commenced to tow, no more water was thrown upon the Anderson, and after she was outside the slip the hawser parted, and she was left adrift, more exposed to the wind than in her former position, with the fire on her unextinguished, and was carried by the tide into an adjoining slip, where the fire was got under control by the city fire department. Two other tugs then took her in tow, throwing water on her and extinguishing the fire. The two former tugs were not prevented from again assisting the Anderson, after she was left adrift, by greater perils or unforeseen circumstances, but voluntarily abandoned her to assist the other vessels. *Held*, that the services of the two former tugs were not part of a continuous salvage service culminating in the extinguishment of the fire.

In Admiralty. Libel for salvage. On appeal from district court. 34 Fed. Rep. 925.

*Benedict, Taft & Benedict,* for libelants.

*Julian B. Shope,* for claimants.

BLATCHFORD, Justice. In these cases I find the following facts: On the morning of the 28th of February, 1887, the lighter Angeline Anderson, loaded with 1,100 bales of cotton, lay on the south side of pier 37, North river, New York city, close to the end of the pier. The steamship Lone Star lay astern of her, and ahead of the Angeline Anderson lay the lighter Lorena. Pier 37 lies nearly east and west. A strong wind was blowing at the time from the north-west. A little after 6 o'clock A. M. a fire broke out on the Lorena, which communicated to the pier, and thence to the cotton on the Angeline Anderson, and to the Lone Star. The fastenings which held the Angeline Anderson to the pier burned off, and she drifted towards the pier below, pier 36, and somewhat up the slip towards the bulkhead. The steam-tug Margaret J. Sandford came into the slip, and played a stream of water on the Anderson and her cargo, and passed a line to her. The steam-tug Harry Roussel came in afterwards, and played some water on the Anderson and her cargo, and passed a line to her, and also one to the Lone Star. After the Roussel got a line to the Anderson, the Sandford cast off her line from the Anderson, and passed a line to the Roussel. The steam-tug Pioneer, having a line to the port bow of the Lone Star, aided by the tug Missisquoi, made fast along-side of the Pioneer, towed the Lone Star out, and thus the Anderson was towed out through the line from her to the Roussel, (the latter being attached to the Lone Star,) and the line from the Rous-

[1] Affirming 34 Fed. Rep. 925.

sel to the Sandford. After the tugs so began to tow, no more water was thrown upon the Anderson by either of them. When the Anderson was got outside of the slip the hawser from the Roussel to her parted, and she was left adrift, with the fire on her not extinguished. She was carried by the tide into the slip next north of pier 37, and up near the bulkhead, and there the fire on her was got under control by water played on her by men belonging to the fire department of the city. Two steam-tugs, the Indian and the Excelsior, then took her in tow, also throwing water on her, and carried her to Hoboken, where the fire was finally extinguished. The Anderson and her cargo were more exposed to the force of the wind in the position in which she was left adrift than in her former position in the slip from which she was removed. There was no other cause than the will of those in charge of the Sandford and the Roussel which prevented them from going again to the assistance of the Anderson at the time they left her adrift. They continued to assist the Lone Star, and paid no more attention to the Anderson. What had been done by them in their efforts to save the Anderson and her cargo was not part of a continuous salvage service which culminated in the extinguishment of the fire. They were not compelled to desist from their efforts by the arising of greater perils or of unforeseen contingencies, but they voluntarily abandoned the Anderson and her cargo.

On the foregoing facts, I find, as conclusions of law, that neither the Sandford nor the Roussel is entitled to any compensation as salvage in respect of either the Anderson or her cargo, and that the libel in each case must be dismissed, with costs of the district court to the claimants of the Anderson, in the suit against her, taxed at $129.80, and with costs of the district court to the claimants of the cotton, in the suit against it, taxed at $120.65, and with costs of this court to the respective claimants, to be taxed.